IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES<br>    Plaintiff | §<br>§<br>§ | |
| V. | § | A-08-CR-256 LY |
| | § | |
| MARCIE BENE MCKNIGHT<br>    Defendant | §<br>§<br>§ | |
| and | §<br>§ | |
| FIDELITY WORKPLACE SERVS., LLC<br>As recordkeeper for GM Benefits & Servs.<br>Center, Garnishee | §<br>§<br>§ | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: the Government's Writ of Garnishment (Clerk's Doc. No. 8); Defendant Marcie Bene McKnight's Request for Hearing and Claim for Exemptions (Clerk's Doc. No. 12); the United States' Response to Defendant's Request for Hearing and Claim for Exemptions (Clerk's Doc. No. 18); and the United States' Letter Brief (Clerk's Doc. No. 22). The District Court referred the motion to the undersigned Magistrate Judge for a hearing (Clerk's Doc. No. 16), which was held on July 25, 2012. After reviewing the parties' pleadings, relevant case law, the entire case file, and the arguments presented at the hearing, the undersigned issues the following Report and Recommendation to the District Court.

**I. GENERAL BACKGROUND**

Defendant Marcie Bene McKnight ("Defendant" or "McKnight") pled guilty to four counts of interstate transportation of stolen property in violation of 18 U.S.C. § 2314 in the District of

Delaware on August 23, 2005. McKnight was sentenced to three years probation, a mandatory special assessment of $400, and restitution in the amount of $287,000. As of April 25, 2012, she still owed $252,250.00 in restitution with no interest accruing. On May 1, 2012, the United States initiated an enforcement proceeding in this cause pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.*, to collect on this debt. This collection proceeding sought to garnish financial accounts held by Fidelity Workplace Services, LLC, as Recordkeeper for GM Benefits and Services Center, (hereinafter "Fidelity") for the benefit of McKnight. On May 7, 2012, the United States District Clerk issued the Writ of Garnishment in this case pursuant to court order. The parties do not dispute that McKnight was properly served pursuant to 28 U.S.C. § 3203(c) and 3205(c)(3).

On May 21, 2012, Fidelity filed an Answer, stating that it manages a retirement plan for the benefit of Defendant Marcie Bene McKnight and that she is presently eligible to receive a lump sum payout, estimated to equal $34,826.89, from the General Motors Salaried Retirement Program.[1]

On July 5, 2012, Defendant McKnight filed a Request for Hearing and Claim for Exemptions (Doc. No. 12), asserting that the subject account is exempt – that it falls within the "restriction on garnishment for earnings" under 15 U.S.C. § 1673 and that McKnight has not received any notice pursuant to 28 U.S.C. § 3204 that her installment payment plan of $250.00 per month has been modified. To date McKnight has been paying her monthly fine.

## II. ANALYSIS

18 U.S.C. § 3613(c) gives the United States the same authority for collecting fines and criminal restitution as the IRS has for collecting taxes but with fewer exemptions. The Fifth Circuit

---

[1] McKnight is eligible—but not obligated—to begin taking payments from the account at age 55. She is now 57 years old.

has allowed the United States to garnish an individual's retirement account. *United States v. Phillips*, 303 F.3d 548 (5th Cir. 2002).

McKnight has the burden of proof for establishing an exemption from garnishment. 28 U.S.C. § 3205(c)(5). She presents two arguments that the retirement account in issue is exempt. First, McKnight argues that the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1673, limits the United States to garnishing 25 percent of her retirement account and the Unites States cannot garnish the entire account. Second, she argues that court-ordered installment plans must be modified by Court Order for the United States to pursue garnishment of additional monetary assets. McKnight did not brief either argument, but did present arguments in support of both at the hearing.

### A.   Consumer Credit Protection Act

McKnight relies on the CCPA, 15 U.S.C. § 1673, asserting that the United States is limited to garnishing 25 percent of the retirement account in issue. Subpart (a) of that statute, titled "Maximum allowable garnishment," provides:

> Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
>
> (1)   25 per centum of his disposable earnings for that week. . . .

15 U.S.C. § 1673 (a). McKnight argues that the retirement account in issue qualifies as "disposable earnings" and thus is limited by the 25 percent cap. The CCPA defines the term "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1672(b). It defines "earnings" to mean "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and *includes periodic payments pursuant to a pension or retirement program.*" 15 U.S.C. § 1672(a) (emphasis added). Thus McKnight argues that the

retirement account in issue qualifies as "earnings," and as such any garnishment is subject to the 25 percent maximum for "disposable earnings" set forth in 15 U.S.C. § 1673(a). McKnight also relies on *United States v. DeCay*, 620 F.3d 534, 544 (5th Cir. 2010), in support of the assertion that her pension benefits qualify as "earnings" subject to the 25 percent cap.

In extensive briefing, the United States responds that because McKnight has not elected to commence receiving benefits and retains the right to withdraw the lump sum in the retirement account, she is not receiving "periodic payments" and the provisions of 15 U.S.C. § 1673 do not apply. The United States cites to various cases concluding that "earnings" under the CCPA are "limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'" *United States v. Laws, et al.*, 352 F. Supp.2d 707, 710-13 (E.D. Va. 2004) (citing *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974); *United States v. Crawford*, 2006 WL 2458710, at *3 (E.D. Cal., Aug. 22, 2006) (annuities are not exempt as earnings); *Pallante v. International Venture Investments*, 622 F. Supp. 667, 669 (N.D. Ohio 1985) (lump sum severance pay benefits are not exempt as earnings). The United States contends that not all wage based or derived assets are intended as a wage substitute. *E.g., Laws*, 352 F. Supp. at 713 (holding that wages which have voluntarily converted into savings are no longer "earnings" under the CCPA); *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1191 (11th Cir. 1991) (once disposable earnings are commingled with other funds in an account, they lose exempt status); *Usery v. First National Bank of Arizona*, 586 F.2d 107, 108-110 (9th Cir. 1978) (compensation does not retain character as "earnings" after deposit because bank account differs from paycheck elements of periodicity and relationship to subsistence). Thus, the United States argues, although the 25 percent limitation would apply if McKnight were drawing her retirement benefits on a monthly basis, because she is not doing so, and because she retains the right to withdraw the funds in a lump sum,

the United States may garnish the lump sum. Although at first blush it does not seem entirely logical that the United States may only garnish 25 percent of McKnight's account if she were receiving its proceeds in monthly installments, but may garnish the entire amount if she does not, the statute and case law appear to permit just that. *See United States v. First Bank & Trust East Texas*, No. 2007 WL 1091021, at *6 (E.D. Tex. Apr. 9, 2007) (holding that "the entire balance" of the defendant's retirement account was subject to garnishment by the United States "for satisfaction of her outstanding criminal fine and court-ordered restitution.")

The Mandatory Victim Restitution Act ("MVRA"), effective April 24, 1996, explicitly limits the exemptions available to debtors for criminal restitution orders and gives the United States broad enforcement powers like those available to the IRS for tax debtors – powers sufficient to garnish McKnight's entire retirement account. 18 U.S.C. § 3613; 26 U.S.C. § 6334; 26 U.S.C. § 401(13)(A); 26 C.F.R. §1.401(a)(13). Just as the IRS does in tax cases, the United States may step into the shoes of McKnight in order to collect restitution and may make an election on McKnight's behalf when she is eligible for a distribution but has not elected to receive one. *United States v. National Bank of Commerce*, 472 U.S. 713, 725 (1985). As for the CCPA, that statute explicitly defines "earnings" as "periodic payments." McKnight is not receiving a "periodic payment" of the retirement benefits in issue, as she admits that she has elected to leave the account untouched. Thus the CCPA—the only exemption relied upon by McKnight—is inapplicable.[2]

---

[2]The Court is a bit confused as to why the United States did not argue that the CCPA exemption was not applicable, as 15 U.S.C. § 1673(b)(C), states:"[t]he restrictions of subsection (a) of this section do not apply in the case of . . .(C) any debt due for any State or Federal tax." Since subsection (a) is the 25 percent restriction, it seems reasonable that it would not apply in a situation such as this, where the United States is employing its broad enforcement authority under the Congressional directive that restitution orders should be satisfied in the same manner as tax liabilities. 18 U.S.C. § 3613(a)-(c).

Neither does McKnight's reliance on *DeCay* help her cause. In *United States v. DeCay*, 620 F.3d 534 (5th Cir. 2010), a case involving two defendant restitution debtors, the Fifth Circuit held that the MVRA allows garnishment of a criminal defendant's retirement benefits to satisfy a criminal restitution order. *DeCay* involved claims by Barre, whose was receiving a monthly pension benefit, and DeCay, who was eligible for a lump sum withdrawal of $77,898 that he had contributed toward his retirement. Addressing Barre's claims, the panel held that monthly pension payments qualify as "earnings" under the CCPA, and as such the United States is limited to 25 percent garnishment of those monthly payments. Specifically, the Fifth Circuit panel found that the monthly payments qualified as "periodic payments made pursuant to a pension or retirement program." *Id.* at 549 (citing 15 U.S.C. § 1672(a)). The Fifth Circuit did not directly address whether the CCPA applied to DeCay's claims, but upheld the District Court's order allowing the United States to cash out the entire $77,898 account. The Fifth Circuit stated that the United States

> clearly has the right to obtain the cash-out in question. The fact that DeCay possessed the option to either cash-out his retirement account or wait and receive future monthly benefits allows the United States to seek an order compelling [a cash-out of] DeCay's benefits.

*Id.* n. 11. Thus *DeCay* does not stand for the proposition that the United States is limited to a 25 percent garnishment of McKnight's account, which she is currently entitled to cash out—but rather contains *dicta* supporting the contrary conclusion.

McKnight has failed to carry her burden to prove she is exempt from a federal collection action based on the CCPA. There is no question that McKnight is not currently drawing a monthly payment from the account. The United States' lien reaches every interest in property that a taxpayer may have, and that it acquires whatever rights the debtor possesses, including the unelected right to withdraw funds from accounts. *United States v. DeCay*, 620 F.3d 534, 545 n. 11 (5th Cir. 2010);

*Kane v. Guardian Capital*, 145 F.3d 1218, 1223 (10th Cir. 1998). Moreover, as a policy matter, as noted in *DeCay*, the legislative history behind the passage of § 303 of the CCPA was to combat the problems of bankruptcy and unemployment that frequently resulted from the unrestricted garnishment of a debtor's wages, and that retirement benefits are intended as a continued means of support for the debtor and his family. 620 F.3d at 545 n. 10. In this case, McKnight apparently does not currently need the money in issue for daily subsistence, or she would have already elected to withdraw the money. Because McKnight is eligible to receive the lump sum now, the United States may garnish the entire lump sum contained in the account.

### B.      Modification Argument

McKnight next argues that there must be a modification to the court-ordered installment payment plan of $250 per month in order for the United States to pursue garnishment of Defendant's retirement benefits. McKnight is mistaken.

28 U.S.C. § 3204 gives the court the authority to set monthly installment payments when certain criteria are met, but the statute no way limits the manner in which the United States may collect restitution payments. Under the MVRA, 18 U.S.C. § 3613(a), the United States may collect restitution in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law, including the FDCPA. *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002) (holding that the "MVRA provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means"); 18 U.S.C. § 3664(m)(1)(A)(i). In addition, like a fine, an order of restitution imposed pursuant to the MVRA is treated as "a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c); *see Phillips*, 303 F.3d at 550-51. The

Internal Revenue Service is authorized to levy upon all property and rights to property belonging to a taxpayer, subject to certain enumerated exemptions in 26 U.S.C. § 6334, in order to satisfy outstanding tax liabilities. *See* 26 U.S.C. § 6331(a). Thus, the ability of the United States to pursue a writ of garnishment to collect criminal restitution is no more hampered by a court order containing a payment schedule than if the United States was pursuing a separate IRS levy against the same individual. The existence of a payment schedule contained in the judgment does not preclude the Government from pursuing the garnishment of Defendant's benefits. *See United States v. Ekong*, 15 F.3d 285, 286 (5th Cir. 2007) (rejecting argument that government could not enforce restitution order because judgment provided for payment in installments). "Court-imposed payment schedules are merely one means available to enforce a restitution judgment." *United States v. James*, 312 F.Supp.2d 802, 806–07 (E.D.Va. 2004). Although McKnight is currently making $250 monthly payments under 28 U.S.C. § 3204, that does not foreclose the United States' other options for garnishment.

### III. RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Marcie Bene McKnight's claim for exemptions and **ENFORCE** the Government's Writ of Garnishment against McKnight.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26th day of October, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE